**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| **3M COMPANY** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO.** |
| **MM MEDICAL SUPPLY, LLC,** | § | _____ |
| | § | |
| **Defendant.** | § | |
| | § | |

## PLAINTIFF'S VERIFIED COMPLAINT AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF

COMES NOW the Plaintiff, 3M Company ("Plaintiff" or "3M"), and files this Verified Complaint and Application for Temporary and Permanent Injunctive Relief against the Defendant, MM Medical Supply, LLC ("Defendant" or "MM Medical"), and alleges as follows:

## NATURE OF THE ACTION

1.     This is an action for trademark counterfeiting, trademark infringement, unfair competition, and other Lanham Act Violations—false endorsement, false association, and false designation of origin—arising from Defendant's ongoing misconduct and use of 3M's name and famous trademarks to perpetrate false and deceptive offers for sale and sales of counterfeit personal protective equipment ("PPE") to unwitting customers, including medical

1

distributors and health care providers, during the global COVID-19 pandemic—without authorization and for unlawful commercial benefit.

2.      Specifically, this lawsuit concerns Defendant's offer for sale and sale of counterfeit purported N95 respirator products falsely bearing 3M trademarks. These counterfeit products are not manufactured or authorized by 3M and falsely claim to be National Institute for Occupational Safety and Health (NIOSH) approved N95 Particulate Filtering Facepiece Respirators. Accordingly, Defendant's sale of these counterfeit respirators is jeopardizing the health and safety of unsuspecting first responders, healthcare workers, and innocent customers who believe they are purchasing 3M-brand respirator products that have been approved by NIOSH as meeting the N95 standard. As a result, this unlawful activity is endangering public health and safety and causing 3M irreparable harm.

3.      For decades, 3M has been providing state-of-the-art, industry-leading safety and medical products to customers throughout the world under its famous 3M marks.  Based on this longstanding, continuous use, customers associate the 3M marks uniquely with 3M.  Now, more than ever, customers are also relying on the famous 3M marks to indicate that the products offered thereunder are of the same superior quality that customers have come to expect from 3M.  This is

especially true with respect to 3M's numerous industry-leading healthcare products and PPE, including Plaintiff's 3M-brand N95 respirators.

4.    Unfortunately, a number of wrongdoers are seeking to exploit the current public health emergency and prey on innocent parties through a variety of scams involving fake 3M N95 respirators and other products in high demand. These scams include unlawful price-gouging, fake offers, counterfeiting, and other unfair and deceptive practices—all of which undercut the integrity of the marketplace and constitute an ongoing threat to public health and safety.

5.    3M is taking an active role in combating the fraudulent activity, price-gouging, and counterfeiting related to counterfeit N95 respirators that has spiked in the marketplace in response to the pandemic.  3M's actions include working with law enforcement authorities around the world, including the U.S. Department of Justice, the Federal Bureau of Investigation, the Department of Homeland Security, and federal and state Attorneys General to combat the sale of counterfeit goods, price-gouging and other unlawful activities.

6.    Including this action, 3M has filed more than 30 lawsuits and sent numerous cease and desist letters against bad actors perpetrating fraud amidst the COVID-19 pandemic.

7.    Defendant MM Medical has orchestrated a fraudulent scheme that features: (i) infringement, dilution, and misuse of 3M's valuable trademarks; (ii)

attempted price gouging; and (iii) offers for sale and sales of counterfeit 3M PPE products to customers, among other things.

8.      3M has no present or prior business relationship with Defendant. Defendant is not an authorized distributor of any of 3M's products and has no rights to use 3M's famous marks. Nonetheless, Defendant has attempted to defraud health care providers and others by representing it is a supplier of authentic 3M respirators.

9.      Defendant is actively deceiving customers by selling products falsely purporting to be 3M-branded respirators, which are counterfeit and not made by 3M, and has further been selling such counterfeit products at exorbitant prices. Defendant's pandemic profiteering not only jeopardizes the health and safety of those fighting the pandemic on the front lines, but also seeks to divert precious public and other funds from the purchase of genuine personal protective equipment.

10.     3M does not—and will not—condone individuals or entities deceptively trading off the fame and goodwill of the 3M name and marks for improper purposes and personal gain.  This is particularly true for those like Defendant who seek to exploit the surge in demand for 3M-brand personal protective equipment products during the COVID-19 global pandemic, which

4

already has claimed over two million lives worldwide, over 500,000 in the United States, and 30,000 in the State of Florida.

11.    To protect the public from Defendant's fraud and pandemic profiteering, to reduce time and  precious resources healthcare providers and procurement officers are forced to waste interacting with such schemes, as well as to forestall any further diminution to the 3M name and marks' reputation, fame, and goodwill, 3M asks this Court to put a stop to Defendant's unlawful and unethical activities, to protect the public from the fraud, and to protect 3M's name and reputation from being associated with Defendant's price-gouging scam. 3M brings this lawsuit against Defendant for trademark counterfeiting, federal and state trademark infringement, unfair competition, false association, false endorsement, false designation of origin, trademark dilution, false advertising, and deceptive acts and practices.  Plaintiff seeks preliminary and permanent injunctive relief and an order that Defendant stop selling counterfeit 3M-brand product and stop using 3M's name and trademarks to ensure the public is protected from counterfeiting, and to ensure 3M's name, reputation, goodwill and famous marks are not damaged by being used in connection with Defendant's ongoing scheme to defraud people seeking personal protective equipment during a pandemic.  3M will donate any damages recovered in this action to charitable

COVID-19 related charitable organizations. 3M may also seek to recover legal fees and costs related to the destruction of counterfeit products seized in this action.

## PARTIES

12.     Plaintiff, 3M Company, is a Delaware corporation, with a principal place of business and corporate headquarters located at 3M Center, St. Paul, Minnesota 55144.

13.     Defendant, MM Medical Supply, LLC, is a Florida corporation with its principal place of business in Tarpon Springs, Florida. MM Medical can be served at 1820 S. Pinellas Ave., Unit 111, in Tarpon Springs, Florida.

## JURISDICTION AND VENUE

14.     The claims for trademark counterfeiting, trademark infringement, unfair competition, false association, false endorsement, false designation of origin, trademark dilution, and false advertising, respectively, asserted in Claims I – V, infra, arise under the Trademark Act of 1946 (as amended; the "Lanham Act"), namely, 15 U.S.C. §§ 1051 *et seq*. Accordingly, this Court has original subject-matter jurisdiction over Claims I – V pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b), and 15 U.S.C. § 1121(a).

15.     3M's claims pursuant to Florida state law, asserted in Claims VI – VIII, infra, arise out of the same set of operative facts and are, therefore, sufficiently related to the federal claims asserted in Claims I – V, such that this Court has

supplemental jurisdiction over Claims VI – VIII pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

16.    As described above, Defendant resides in this District and has purposely availed itself of the privilege of transacting business in this District.

17.    A substantial part of the events giving rise to the claims occurred in this District. Therefore, venue is proper in this District, pursuant to 28 U.S.C. § 1391(b)(2).

18.    For the reasons stated above, Defendant is also subject to personal jurisdiction in this District. Therefore, venue is also proper in this District, pursuant to 28 U.S.C. § 1391(b)(3).

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### A. 3M Company

19.    3M has grown from a small-scale mining venture in Northern Minnesota in 1902 to what it is today, namely: an industry-leading provider of scientific, technical, and marketing innovations throughout the world.  Today, 3M's portfolio includes more than 60,000 goods and services, ranging from household and school supplies, to industrial and manufacturing materials, to medical supplies and safety equipment. 3M actively safeguards and protects its intellectual property. This includes maintaining substantial numbers of federal trademark registrations.

**B.    The 3M Brand**

20.    The 3M brand is associated with products and materials for a wide variety of medical supplies, devices, and safety products, including the 3M-brand N95 respirator products. As a result, 3M-brand products are highly visible throughout many workplaces, including hospitals, nursing homes, and other care facilities where patients, care providers, and procurement officers value and rely upon the high quality and effectiveness of products associated with the 3M brand.

**C.    The Famous "3M" Marks**

21.    Over the past century, Plaintiff has invested hundreds of millions of dollars in advertising and promoting its 3M-brand products to customers throughout the world (including, without limitation, its 3M-brand N95 respirator) under the standard-character mark "3M" and the 3M logo shown below (together, the "3M Marks"):



22.    For decades, products offered under Plaintiff's 3M Marks have enjoyed enormous commercial success (including, without limitation, 3M-brand N95 respirators). Indeed, in 2020, alone, 3M's sales of products offered under the 3M Marks totaled in the billions of dollars.

23.      Over the same period of time, products offered under Plaintiff's 3M Marks have regularly been the subject of widespread, unsolicited media coverage and critical acclaim.

24.      Based on the foregoing, customers associate the 3M Marks uniquely with Plaintiff and recognize them as identifying Plaintiff as the exclusive source of goods and services offered under the 3M Marks.  Based on the foregoing, the 3M Marks have also become famous among customers throughout the United States.

25.      To strengthen Plaintiff's common-law rights in and to its famous 3M Marks, Plaintiff has obtained numerous federal trademark registrations, including, without limitation:      (i) U.S. Trademark Reg. No. 3,398,329, which covers the standard-character 3M mark in Int. Classes 9 and 10 for, *inter alia*, respirators (the "'329 Registration"); (ii) U.S. Trademark Reg. No. 2,692,036, which covers the 3M logo for, *inter alia*, a "full line of surgical masks, face shields, and respiratory masks for medical purposes" (the "'036 Registration"); and (iii) U.S. Trademark Reg. No. 2,793,534, which covers the 3M design mark in Int. Classes 1, 5, and 10 for, *inter alia*, respirators (the "'534 Registration").  *See* **Exhibits 1-3**.

26.      Each of the foregoing Registrations is valid, in effect, and on the Principal Trademark Register.

27.      Each of the foregoing Registrations is "incontestable" within the meaning of 15 U.S.C. § 1065.  Accordingly, each Registration constitutes conclusive

evidence of: (i) Plaintiff's ownership of the 3M Marks; (ii) the validity of the 3M Marks; (iii) the validity of the registration of the 3M Marks; and (iv) 3M's exclusive right to use the 3M Marks throughout the United States for, *inter alia*, respirators.

28.     Plaintiff's famous 3M Marks do more than identify Plaintiff as the exclusive source of goods and services offered thereunder.  Indeed, the famous 3M Marks also signify to customers that 3M-brand products offered under the 3M Marks are of high quality and adhere to strict quality-control standards.  Now, more than ever, customers rely on the famous 3M Marks to signify that products offered under the 3M Marks are of the same high quality that customers have come to expect of the 3M brand over the past century.

**D.   3M's Extensive Efforts to Combat the COVID-19 Pandemic**

29.     Healthcare professionals and other first responders are heroically placing their health and safety on the line to battle COVID-19.  To assist in the battle, 3M has been working around the clock to supply healthcare workers, first responders, and critical infrastructure operators with billions of 3M-brand respirators. Beginning in January 2020, 3M began increasing its production of 3M-brand respirators, increasing its annual respirator production capacity to 2 billion globally by the end of 2020. 3M's N95 respirator products are critical to those individuals on the front lines combating COVID-19.

30.    The demand for 3M-brand respirators has grown exponentially in response to the pandemic, and 3M has committed to producing respirators in response to this demand while keeping its respirators priced fairly. 3M is working with customers, authorized distributors, governments, and medical officials to direct 3M supplies to where they are needed most.

31.    Medical professionals and first responders throughout the world are donning extensive PPE as they place their health and safety on the line in the battle against COVID-19. As 3M states on the homepage of its website, 3M is committed to getting personal protective equipment to healthcare workers and first responders:



32.    Among the PPE that 3M is providing to the heroic individuals on the front lines of the battle against COVID-19 are Plaintiff's 3M-brand N95 respirators.

33.    Below is an image of Plaintiff's 3M-brand, Model 1860 respirator:



34.     Authentic N95 respirators help reduce exposure to airborne biological particles and liquid contamination when appropriately selected, fitted, and worn.

35.     Unfortunately, certain opportunistic third parties are seeking to exploit the increased demand for 3M-brand N95 respirators by offering to sell them for exorbitant prices, selling counterfeit products, and accepting money for 3M-brand N95 respirators despite not having the product to sell and/or never intending to deliver the product to unwitting buyers. Pandemic profiteers like Defendant prey upon those most in need of genuine personal protective equipment for use by those on the front lines of the fight against the pandemic — for example, medical providers who, like most, have struggled to address the enormous financial and logistical challenges presented by COVID-19.

36.     To help protect customers on the front lines of the COVID-19 battle from deception and inferior products, and to help reduce time and money wasted by government and other procurement officials on scams, 3M is working

diligently with law enforcement, retail partners, and others to combat unethical

and unlawful business practices related to 3M-brand N95 respirators.  3M's efforts

are featured at www.3m.com/covidfraud.

37.      Examples of 3M's efforts to combat price-gouging, counterfeiting, and

other unlawful conduct during COVID-19 include:

a. 3M posted on its website the U.S. per respirator, single case list price

for the most common models of its 3M-brand N95 respirators so that

customers can readily identify and avoid inflated pricing.[1]

**U.S. List Prices for Common N95 Respirator Models**

These list prices are per respirator.

These list prices represent suggested prices to end customers. 3M's prices to its authorized distributors are lower than these list prices.

An end customer's actual prices may be lower than these list prices, as negotiated between the end customer and its chosen distributor.

List prices for these models sold in Canada are similar on a currency-adjusted basis.

| Model | Type | List Price (USD) |
|---|---|---|
| 1804 | Surgical | $0.68 |
| 1804S | Surgical | $0.68 |
| 1860 | Surgical | $1.27 |
| 1860S | Surgical | $1.27 |
| 1870+ | Surgical | $1.78 |
| 8210 | Standard | $1.02 - $1.31 |
| 8210Plus | Standard | $1.18 - $1.50 |
| 8210V | Standard | $1.48 - $1.88 |
| 8110S | Standard | $1.08 - $1.37 |
| 8200 | Standard | $0.63 - $0.80 |
| 8511 | Standard | $2.45 - $3.11 |
| 9105 | Standard | $0.64 - $0.81 |
| 9105S | Standard | $0.64 - $0.81 |
| 9210+ | Standard | $1.40 - $1.78 |
| 9211+ | Standard | $2.68 - $3.40 |

b. 3M created a form on its website that customers and others can use to

report suspected fraud, counterfeiting, and price gouging.

Additionally, 3M has created online resources to help spot incidents

---

[1] get-the-facts-n95-respirator-pricing.pdf (3m.com).

of price gouging, identify counterfeiting, and ensure products are from 3M authorized distributors.

   

**WARNING: Fraud and Counterfeit Activity**

We have created a new 3M hotline for the U.S. and Canada that end-users and purchasers of 3M products can call for information on how to identify authentic 3M products and to ensure products are from 3M authorized distributors.

**1 (800) 426-8688**
Call the fraud hotline.

**Report a concern**

**STATEMENT: Fraudulent Activity, Price Gouging, and Counterfeit Products**
(PDF, 1.6 MB)

3M recommends purchasing our products from a 3M authorized distributor or dealer only. This offers the greatest assurance that you will receive authentic 3M product.

If you need help identifying 3M authorized distributors and dealers in your area, please contact 3M Help Center or 1 (888) 364-3577 in the United States. In Canada, please contact 3M Canada Customer Service at 1 (800) 364-3577.

c. 3M created a fraud "hotline" that customers and others can call to report suspected incidents of fraud, price-gouging, and counterfeiting.[2]

---

[2] 3M PPE How to identify fraudulent offers, counterfeit products and price gouging.



d.  To date, 3M has fielded and investigated more than 13,300 fraud reports globally, filed more than 30 lawsuits, and has been granted at least 17 temporary restraining orders and 11 preliminary injunctions. Additionally, more than 19,000 false or deceptive social media posts, more than 17,000 fraudulent e-commerce offerings and more than 300 deceptive domain names have been removed.[3]

---

[3] *See* 3m-covid-19-infographic-print-version.pdf; *see also* https://www.3m.com/3M/en_US/worker-health-safety-us/covid19/covid-fraud.





## I.  Defendant's Unlawful Conduct

38.     Despite 3M's extensive measures to combat fraud, price-gouging and counterfeiting of its 3M-brand N95 respirators, these illicit activities continue. Defendant is a prime example of this unlawful behavior, which is damaging to public health and safety in a time of unprecedented crisis, as well as harmful to

16

3M's good name and brand. Defendant's misrepresentations and infringement are also likely to confuse the public into falsely believing that Defendant is affiliated with 3M or 3M authorized distributors.

39.     On or about January 12, 2021, buyers for South Shore Health System—the largest independent non-profit health system in southeastern Massachusetts—inquired, via email correspondence, about Defendant's inventory of 3M respirators. *See* __Exhibit 4.__ That same day, Defendant communicated that it had 57,600 units of 3M Model 1860 N95 respirators, 105,000 units of 3M Model 8210 N95 respirators, and 52,800 units of 3M Model 9205+ N95 respirators available for sale. *See* __Exhibit 4__. In its correspondence, Defendant identified its bulk pricing structure, which included prices for the purported 3M Model 1860 respirators ranging between $4.05[4] and $4.25 per respirator; the 8210 respirators were offered for sale between $3.45 and $3.65 per respirator. Representatives of South Shore Health System requested to purchase all available respirators at a price of $3.00 each. One of Defendant's representatives, however, stated that Defendant's "cost to acquire these masks is much higher than $3.00 each." *See* Exhibit 4, correspondence at 4:36 p.m.

---

[4] The initial pricing provided by Defendant listed the 1860 respirators at $3.05 each. However, in correspondence from Defendant to South Shore Health System on January 12, 2021, Defendant corrected the figure and noted the correct price per respirator was $4.05.

40.    Given its desperate need for PPE, South Shore Health System agreed to purchase all of Defendant's purported 3M respirators, despite these exorbitant prices. On January 12, 2021, Defendant provided a formal quote, "valid through January 19, 2021," for $768,880.00. *See* **Exhibit 5.** This quote included the sale of 57,600 units of 3M Model 1860 respirators at $4.00 each, for a total of $230,400; 105,000 3M Model 8210 respirators at $3.35 each, for a total of $351,750.00; and 52,600 units of 3M Model 9205+ respirators at $3.55 each, for a total of $186,730.00. *Id.* Upon request by South Shore Health System, Defendant provided sample respirators.

41.    3M determined that the sample respirator purporting to be a 3M Model 1860 N95 Respirator that Defendant provided to South Shore Health System was counterfeit.

42.    Defendant's representations were likely to mislead and/or deceive a reasonable consumer into believing that Defendant is a 3M authorized distributor of 3M products and/or has an association or affiliation with 3M.  Here, Defendant's email actually misled and deceived experienced buyers in the procurement group of South Shore Health System into believing that Defendant was an authorized distributor of hundreds of thousands of 3M-brand N95 respirators.

43.    Another element of Defendant's unlawful conduct is price gouging. Even on the low end of Defendant's stated pricing structure, Defendant's quote of $4.05 per unit of 3M brand, N95 Model 1860 respirator is 318% over 3M's U.S. single case per respirator list price of $1.27 per respirator.  Defendant's quote of $3.35 per 3M brand, N95 Model 8210 respirator is a 255% markup over 3M's U.S. single case per respirator list price of $1.02-$1.31 per respirator.[5]

44.    The mere association of 3M's valuable brand with such price-gouging harms the brand, not to mention the serious financial and public health threats to public health agencies that are under strain in the midst of a worldwide pandemic.

45.    South Shore Health System has not been the sole target of Defendant's fraudulent conduct. Rather, Defendant's activities are malicious and pervasive, as it continues its attempts to price gouge customers such as health care providers and to pass off counterfeit product.

46.    Defendant's sale of counterfeit products that have not been approved by NIOSH as meeting the N95 standard puts medical professionals, first responders, and other end users of these counterfeit products at a substantial risk of harm.

_____

[5] *Compare* Exh. 3 *to* 3M's pricing sheet, provided through Footnote 1 and paragraph 37(a)'s illustration.

47.     Defendant's misrepresentations and infringements of the 3M Marks has and will continue to cause confusion among the public and result in false beliefs that Defendant is affiliated with 3M and is selling authentic 3M respirators, which it is not.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
*(Trademark Counterfeiting - 15 U.S.C. §§ 1114(1), 1116(a))*

48.     3M repeats and incorporates by reference the foregoing statements and allegations in paragraphs 1-47 of the Complaint as though set forth fully herein.

49.     Count I is a claim for trademark counterfeiting under U.S.C. §§ 1114(1), 1116(a).

50.     Defendant is using spurious designations that are identical to the 3M Marks.

51.     Defendant has been using these spurious designations identical to 3M Marks for the purpose of advertising, promoting, offering for sale, and selling counterfeit 3M-brand respirator products.

52.     Defendant has used these spurious designations identical to 3M Marks in commerce, knowing they are counterfeit, to advertise, promote, offer for sale, and sell 3M-brand respirator products including, for example, providing purchasers with pictures and photocopies of falsified documents bearing the 3M

Marks, which purport to be certifications for the products that Defendant is attempting to pass off as 3M-brand N95 respirators.

53.    Defendant's use of the spurious designations identical to 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products, as alleged, herein is causing, and is likely to continue to cause, customer confusion, and/or deception about whether Defendant's products originate with, and/or are sponsored or approved by, and/or offered with authorization from, 3M.

54.    Based on 3M's longstanding and continuous use of its 3M Marks in United States commerce, as well as the federal registration of the 3M Marks that are now incontestable, Defendant had actual and constructive knowledge of 3M's superior rights in and to the 3M Marks when Defendant began using spurious designations identical to 3M Marks as part of their efforts to deceive customers and the general public.

55.    Upon information and belief, Defendant adopted and used the 3M Marks in furtherance of Defendant's willful and deliberate scheme of trading upon the extensive customer goodwill, reputation, fame, and commercial success of products that 3M offers under its 3M Marks, including, without limitation, 3M-brand respirator products.

56.     Upon information and belief, Defendant has made, and may continue to make, ill-gotten profits and gain from their unauthorized use of the 3M Marks, to which Defendant is not entitled at law or in equity.

57.     Defendant's acts and conduct complained of herein constitute trademark counterfeiting in violation of 15 U.S.C. §§ 1114(1) and 1116(a)).

58.     3M has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.  The damage suffered by 3M is exacerbated by the fact that Defendant is advertising and offering for sale non-3M brand respirator products during a global pandemic when these products are playing a critical role in helping to protect public health.

59.     Defendant's acts, described herein, have been willful and in bad faith, making this an exceptional case within the meaning of 15 U.S.C. § 1117(a).

60.     3M has been damaged by the acts of Defendant in an amount to be proved at trial and donated to charitable COVID-19 related relief efforts.

61.     3M has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

62.     3M requests the relief set forth in the Prayer for Relief below.

## SECOND CLAIM FOR RELIEF

*(Trademark Infringement Under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1))*
*(Infringement of the Federally Registered 3M Marks)*

63.     3M repeats and incorporates by reference the foregoing statements and allegations though set forth fully herein.

64.     Count I is a claim for trademark infringement under 15 U.S.C. § 1114.

65.     3M is the exclusive owner of each of the federally registered 3M Marks.

66.     3M has the exclusive right to use each of the 3M Marks in United States commerce for, *inter alia*, advertising, promoting, offering for sale, and selling Plaintiff's 3M-brand N95 respirators.

67.     Defendant is using 3M Marks in commerce to advertise, promote, offer for sale, and sell 3M-brand N95 respirators.

68.     Defendant's use of the 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products, as alleged, herein, is causing, and is likely to continue causing, customer confusion, mistake, and/or deception about whether Defendant is a licensee, authorized distributor, and/or affiliate of 3M and/or products that Plaintiff offers under its 3M Marks, including, without limitation, 3M-brand N95 respirators.

69.     Defendant's use of the 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products, as alleged, herein, is causing, and is likely to continue causing, customer

confusion, mistake, and/or deception about whether Defendant and/or Defendant's products are affiliated, connected, and/or associated with 3M and/or products that 3M offers under its 3M Marks, including, without limitation, 3M-brand N95 respirators.

70.     Defendant's use of the 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products, as alleged, herein is causing, and is likely to continue causing, customer confusion, mistake, and/or deception about whether Defendant and/or Defendant's products originate with, and/or are sponsored or approved by, and/or offered under a license from, 3M.

71.     3M has not consented to the use of its famous 3M Marks by Defendant.

72.     Based on 3M's longstanding and continuous use of its 3M Marks in United States commerce, as well as the federal registration of Plaintiff's 3M Marks, Defendant had actual and constructive knowledge of 3M's superior rights in and to the 3M Marks when Defendant began using the 3M Marks as part of its bad-faith scheme to confuse and deceive customers, as alleged, herein.

73.     Upon information and belief, Defendant adopted and used the 3M Marks in furtherance of Defendant's willful, deliberate, and bad-faith scheme of exploiting the extensive customer goodwill, reputation, fame, and commercial

success of products that 3M offers under its 3M Marks, including, without limitation, 3M-brand N95 respirators.

74.     Upon information and belief, Defendant has made, and will continue to make, substantial profits and gain from its unauthorized use of 3M Marks, to which Defendant is not entitled at law or in equity.

75.     Upon information and belief, Defendant's acts and conduct complained of herein constitute trademark infringement in violation of 15 U.S.C. § 1114(a). 3M has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law. The damage suffered by 3M is exacerbated by the fact that Defendant is advertising and offering for sale 3M-branded N95 respirators at exorbitantly inflated prices during a global pandemic when 3M's products are urgently needed to help protect public health. Such conduct invites public criticism of 3M, and the manner in which 3M's N95 respirators are being distributed and sold during the COVID-19 pandemic and is likely to cause confusion about 3M's role in the marketplace for respirators that are urgently needed to help protect public health. Whereas 3M's corporate values and brand image center around the application of science to improve lives, Defendant's conduct imminently and irreparably harms 3M's brand.

76.    3M will donate any damages recovered in this action to charitable COVID-19 related charitable organizations.

77.    3M has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

78.    3M has no adequate remedy at law.

### THIRD CLAIM FOR RELIEF
(*Unfair Competition, False Endorsement, False Association, and False Designation of Origin Under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)*)
(*Use of the 3M Marks*)

79.    3M repeats and incorporates by reference the foregoing statements and allegations as set forth fully herein.

80.    Count II is a claim for federal unfair competition, false endorsement, false association, and false designation of origin under 15 U.S.C. § 1125(a)(1)(A).

81.    Upon information and belief, Defendant's acts and conduct complained of herein constitute unfair competition, false endorsement, false association, and/or false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A).

82.    Upon information and belief, Defendant's use of Plaintiff's famous 3M Marks to advertise, market, offer for sale, and/or sell counterfeit 3M-brand N95 respirators to customers at exorbitant prices, in general, and during a global pandemic such as COVID-19, specifically, also constitutes unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A).

83.     Defendant also falsely represented itself as affiliated, connected, and/or associated with 3M and/or products that 3M offers under its 3M Marks, including, without limitation, 3M-brand N95 respirators. Defendant sought to create the false impression that the products it purported to offer to healthcare workers and others originate from, and/or are sponsored or approved by, and/or offered under a license from, 3M.

84.     Defendant has also falsely held itself out to be an agent of and/or authorized by 3M to sell and/or distribute 3M-branded products, when this is not the case.

85.     3M will donate any damages recovered in this action to charitable COVID-19 related charitable organizations.

86.     3M has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

87.     3M has no adequate remedy at law.

### FOURTH CLAIM FOR RELIEF
*(Trademark Dilution Under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c))*
*(Dilution of the Famous 3M Marks)*

88.     3M repeats and incorporates by reference the foregoing statements and allegations as though set forth fully herein.

89.     Count III is a claim for federal trademark dilution under 15 U.S.C. § 1125(c).

27

90.    The 3M Marks are famous and have been famous at all times relevant to this action. The 3M Marks were famous before and at the time Defendant began using the 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products (including, without limitation, 3M-brand N95 respirators).

91.    Defendant's use of Plaintiff's famous 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products (including, without limitation, 3M-brand N95 respirators) is likely to dilute the distinctive quality of the famous 3M Marks, such that the famous 3M Marks' established selling power and value will be whittled away.

92.    Defendant's use of Plaintiff's famous 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products (including, without limitation, 3M-brand N95 respirators) is likely to dilute the distinctive quality of the famous 3M Marks, such that famous 3M Marks' established ability to identify Plaintiff as the exclusive source of products offered under the 3M Marks (including, without limitation, Plaintiff's 3M-brand N95 respirators) will be whittled away.

93.    Defendant's use of Plaintiff's famous 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products (including, without limitation, 3M-brand N95 respirators) at

exorbitant prices, in general, and during a global pandemic such as COVID-19, specifically, is likely to dilute the reputation of the famous 3M Marks, such that famous 3M Marks' established ability to indicate the superior quality of Products offered under such Marks (including, without limitation, Plaintiff's 3M-brand N95 respirators), will be whittled away.

94.    Defendant's misconduct also threatens to harm the reputation of the 3M Marks, constituting dilution by tarnishment of the famous 3M Marks.

95.    Defendant's acts and conduct complained of herein constitute trademark dilution in violation of 15 U.S.C. § 1125(c).

96.    3M has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.  The damage suffered by 3M is exacerbated by the fact that Defendant is advertising and offering for sale 3M-branded N95 respirators at exorbitantly inflated prices during a global pandemic when 3M's products are urgently needed to help protect public health.  Such conduct invites public criticism of 3M and the way 3M's respirators are being distributed and sold during the COVID-19 pandemic and is likely to cause confusion about 3M's role in the marketplace for respirators that are urgently needed to help protect public health.  Whereas 3M's corporate values and brand image center around the application of science to improve lives, Defendant's conduct imminently and irreparably harms 3M's brand.

97.    3M will donate any damages recovered in this action to charitable COVID-19 related charitable organizations.

98.    3M has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

99.    3M has no adequate remedy at law.

### FIFTH CLAIM FOR RELIEF
(*False Advertising Under Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B)*)
(*Defendant's Formal Quote*)

100.    3M repeats and incorporates by reference the foregoing statements and allegations as though set forth fully herein.

101.    Count IV is a claim for false and deceptive advertising under 15 U.S.C. § 1125(a)(1)(B).

102.    The statements that Defendant made, by and through its representative, in its communications with South Shore Health System's procurement manager, Barry O'Shaughnessy, constitute commercial advertising and/or commercial promotion.

103.    The statements that Defendant made in its email contained false, misleading, and/or deceptive statements about the nature, characteristics, qualities, and/or geographic origin of Defendant and/or the products that Defendant allegedly had available for sale.

104.    The statements that Defendant made in its email communications contained false, misleading, and/or deceptive statements about the nature, characteristics, qualities, and/or geographic origin of 3M and 3M-brand products, including, without limitation, 3M-brand N95 respirators.

105.    The false, misleading, and/or deceptive statements from Defendant were material to South Shore Health System's purchasing decisions, including, without limitation, its agreement to purchase purported 3M Model 1860 respirators which were, in fact, counterfeit.

106.    Defendant placed its email communications into interstate commerce by, *inter alia*, sending it to at least one South Shore Health System official's email account, namely, Mr. O'Shaughnessy.

107.    Defendant's email communications directly and/or proximately caused and/or is likely to cause 3M to suffer harm in the form of lost sales (including, without limitation, lost sales of Plaintiff's 3M-brand N95 respirators), as well as irreparable diminution to the 3M brand and 3M Marks' reputation, fame, and goodwill.

108.    Defendant's acts and conduct complained of herein constitute false advertising in violation of 15 U.S.C. § 1125(a)(1)(B).

109.    3M has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.  The

31

damage suffered by 3M is exacerbated by the fact that Defendant is advertising and offering for sale 3M-branded N95 respirators at exorbitantly inflated prices during a global pandemic when 3M's products are urgently needed to help protect public health. Such conduct invites public criticism of 3M and the way 3M's respirators are being distributed and sold during the COVID-19 pandemic and is likely to cause confusion about 3M's role in the marketplace for respirators that are urgently needed to help protect public health. Whereas 3M's corporate values and brand image center around the application of science to improve lives, Defendant's conduct imminently and irreparably harms 3M's brand. 3M's damages include diminishment in brand value caused by false affiliation with Defendant and its wrongful actions.

110.    3M will donate any damages recovered in this action to charitable COVID-19 related charitable organizations.

111.    3M has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

112.    3M has no adequate remedy at law.

## SIXTH CLAIM FOR RELIEF
*(Dilution Under the Florida Trademark Statute)*
*(Dilution of, Injury to the 3M Brand and Famous 3M Marks)*

113.    3M repeats and incorporates by reference the foregoing statements and allegations as though set forth fully herein.

114.    Count V is a claim for dilution under FLA. STAT. § 495.151.

115.    Upon information and belief, Defendant's acts and conduct complained of herein constitute dilution and injury to business reputation in violation of FLA. STAT. § 495.151.

116.    3M has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

117.    3M will donate any damages recovered in this action to charitable COVID-19 related charitable organizations.

118.    3M has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

119.    3M has no adequate remedy at law.

### SEVENTH CLAIM FOR RELIEF
*(Trademark Infringement Under the Florida Trademark Statute)*
*(Infringement of the 3M Marks)*

120.    3M repeats and incorporates by reference the foregoing statements and allegations as though set forth fully herein.

121.    Count VI is a claim for trademark infringement under FLA. STAT. § 495.131.

122.    Upon information and belief, Defendant's acts and conduct complained of herein constitute trademark infringement in violation of FLA. STAT. § 495.131.

33

123.    3M has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

124.    3M will donate any damages recovered in this action to charitable COVID-19 related charitable organizations.

125.    3M has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

126.    3M has no adequate remedy at law.

**EIGHTH CLAIM FOR RELIEF**
(*Unfair Competition and Passing Off Under Florida Common Law*)
(*Use of the 3M Marks*)

127.    3M repeats and incorporates by reference the foregoing statements and allegations as though set forth fully herein.

128.    Count VII is a claim for unfair competition under Florida common law.

129.    The Florida common law tort of unfair competition covers situations where a defendant attempts to pass off its goods or services as those of someone else by simulating the trademark owner's product, name, advertising, or marks. It is the umbrella for all statutory and non-statutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters.

130.    Upon information and belief, Defendant's acts and conduct complained of herein constitute unfair competition and passing off in violation of Florida common law.

131.    3M has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

132.    3M will donate any damages recovered in this action to charitable COVID-19 related charitable organizations.

133.    3M has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

134.    3M has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, based on Defendant's conduct complained of, herein, and upon Plaintiff asks that this Court:

A.    To enter an Order, finding in Plaintiff's favor on each Claim for Relief asserted herein;

B.    Pursuant to applicable Florida law and 15 U.S.C. § 1116:

1. Preliminarily and permanently enjoining Defendant, its agents, servants, employees, officers and all persons and entities in active concert and participation with them from using the 3M Marks (or any other mark(s) confusingly similar thereto) for, on, and/or in connection with the manufacture,

distribution, advertising, promoting, offering for sale, and/or sale of any goods or services, including, without limitation, 3M-brand N95 respirators;

2. Preliminarily and permanently enjoining Defendant, its agents, servants, employees, officers and all persons and entities in active concert and participation with them from falsely representing itself as being a distributor, authorized retailer, and/or licensee of 3M and/or any of 3M's products (including, without limitation, 3M-brand N95 respirators) and/or otherwise falsely representing to have an association or affiliation with, sponsorship by, and/or connection with, 3M and/or any of 3M's products; and

3. Order Defendant to file with the Court and serve upon 3M's counsel, within thirty (30) days after service of the order of injunction, a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the injunction;

C. Pursuant to applicable Florida law and 15 U.S.C. § 1117:

1. Order Defendant to provide 3M with a full accounting of all manufacture, distribution and sale of products under the 3M Marks (including, without limitation, 3M-brand N95 respirators), as well as all profits derived therefrom;

2. Order Defendant to disgorge and pay to Plaintiff—for donation to charitable COVID-19 related relief efforts—all of Defendant's profits derived from

the sale of infringing goods offered under the 3M Marks (including, without limitation, 3M-brand N95 respirators);

3. Award 3M—for donation to charitable COVID-19 related relief efforts—treble damages in connection with Defendant's infringement of the 3M Marks;

4. Find that Defendant's acts and conduct complained of herein render this case "exceptional";

5. Award 3M its costs and reasonable attorneys' fees incurred in this matter; and

6. Order that Defendant pay any costs associated with the transportation and destruction of all counterfeit respirators in its possession, custody, and control.

D. Pursuant to 15 U.S.C. § 1118, order the destruction of any unauthorized goods and materials within the possession, custody, and control of Defendant and Defendant's client(s) that bear, feature, and/or contain any copy or colorable imitation of 3M's Marks;

E. Award Plaintiff pre-judgment and post-judgment interest against Defendant, which 3M will donate to charitable COVID-19 related relief efforts;

F. Award Plaintiff such other relief that the Court deems just and equitable; and

G.    Allow Plaintiff such other relief, at law or in equity, to which it may show itself justly entitled.

## DEMAND FOR JURY TRIAL

3M hereby requests a trial by jury for all issues so triable.

Dated: March 31, 2021

Respectfully submitted,

*/s/ Donald A. Blackwell*
**DONALD A. BLACKWELL**
Fla. Bar No. 370967
Don.blackwell@bowmanandbrooke.com
jennifer.reni@bowmanandbrooke.com
**BOWMAN AND BROOKE LLP**
1064 Greenwood Blvd., Suite 212
Orlando, Florida 32746
Tel.: 407.585.7600; Fax:  972.585.7610

**ALEXANDER J. PENNETTI**
*[Pro Hac Vice Admission Pending]*
Alex.pennetti@bowmanandbrooke.com

**BOWMAN AND BROOKE LLP**
5830 Granite Pkwy, Suite 1000
Plano, Texas 75024
Tel.: 972.616.1700; Fax: 972.616.1701

**ATTORNEYS FOR PLAINTIFF**
**3M COMPANY**

## **<u>DECLARATION</u>**

Under penalties of perjury, I declare that I have read the foregoing Plaintiff's Verified Complaint and Application for Temporary and Permanent Injunctive Relief. I verify and declare that the facts stated in it are true to the best of my knowledge and belief.

*/s/ Donald A. Blackwell*